IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**October 28, 2024**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MARK CANTERBURY,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-158**    (Fam. Ct. Cabell Cnty. Case No. FC-06-2023-D-429)

**ANGELA CANTERBURY,**
**Petitioner Below, Respondent**

### MEMORANDUM DECISION

Petitioner Mark Canterbury ("Husband") appeals the Family Court of Cabell County's March 12, 2024, final divorce order which denied him any portion of Respondent Angela Canterbury's ("Wife") retirement account(s) and ordered him to pay $6,000 toward her attorney's fees. Wife responded in favor of the family court's decision.[1] Husband filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision, but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21 of the Rules of Appellate Procedure for resolution in a memorandum decision. For the reasons set forth below, the family court's decision is affirmed, in part, vacated, in part, and remanded to the family court with directions as set forth herein.

Husband and Wife are the parents of two adult children. They were married on November 11, 1994, and separated on January 2, 2023, after Husband became angry at Wife about a differing biblical viewpoint and ordered Wife to move in with her parents who lived next door. On February 18, 2023, Husband called Wife more than thirty times in a row and demanded that she come home and bring her Bible because she was going to learn to be submissive. Wife refused.

On or about February 19, 2023, Husband purchased a gun, threatened to shoot and kill Wife, and sent her pictures of the gun and bullets he purchased. Husband told Wife on the phone that he was going to kill her, and that God told him to do it. After receiving that threat, Wife and her parents went to the police station to get a domestic violence protection order ("DVPO"). While at the police station, Husband called Wife's Father and the police

---

[1] Mark Canterbury is represented by Tyler C. Haslam, Esq. Angela Canterbury is represented by Amy C. Crossan, Esq.

officer answered the phone. Husband told the officer there was nothing he could do to stop him from killing Wife. Husband also called the parties' children and told them he was going to kill their mother.

Husband was criminally charged with attempted first-degree murder of Wife, presentment of a firearm during the commission of a felony, and two counts of harassment for harassing Wife's parents. He was in jail for one or two days, and, upon release, immediately violated the DVPO. He was then charged with violation of the DVPO and incarcerated for approximately one month. He has been ordered to home confinement since March 2023.

Wife filed for divorce on September 13, 2023, alleging mental cruelty. A temporary hearing was held on November 14, 2023. Husband requested to buy out Wife's interest in the marital home. Wife refused Husband's offer and requested that the home be sold because it was next door to her parents' residence. The family court entered its temporary order on November 28, 2023, ordering the marital home sold. After the temporary hearing, the family court appointed a special commissioner because Husband refused to sign paperwork to assist with the sale of the home.

The final hearing was held on January 16, 2024. At that hearing, Wife testified that during the marriage Husband had numerous extramarital affairs, called her names, threatened to kill her, threw things at her, damaged her personal belongings, sent inappropriate pictures to her while at work, and had anger outbursts which lasted from days to weeks, among other things. The family court ruled that the $39,000 equitable interest Husband had in Wife's retirement was awarded to Wife as lump sum alimony under West Virginia Code § 48-6-301 (2018).

On March 1, 2024, Wife's counsel filed a request for Husband to pay $6,000 in attorney's fees, which the family court granted. Wife's attorney then filed a proposed final order on March 4, 2024, which included Wife's $6,000 attorney's fees award and directed that such money would be paid to her from the marital home sale proceeds. On March 11, 2024, Husband filed objections and a motion for reconsideration to the spousal support award, attorney's fees award, and the appointment of a special commissioner. Wife filed a response to Husband's objections on March 12, 2024. The family court entered the proposed final order on March 12, 2024. It is from that order that Husband now appeals.

For these matters, we apply the following standard of review.

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Husband raises two assignments of error, which we will address in turn. First, Husband asserts that the family court erred by awarding spousal support to Wife. In support of his argument, Husband states that the award of spousal support was not appropriate under *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996) and its progeny, was designed to provide for the care and maintenance of the payee, results in an inequitable distribution, and that the family court failed to properly apply the law to the facts of this case. We disagree.

West Virginia Code § 48-6-301 provides a list of twenty factors to be considered when weighing an award of spousal support. In its final order, the family court stated that it specifically considered the following facts in making a determination of spousal support: (1) the parties' twenty-nine-year marriage; (2) the values of the marital home and Wife's retirement; (3) Husband's poor health; (4) the fact that Husband chose not to save for retirement; (5) the fact that Husband is charged with crimes against Wife; (6) Husband's extreme fault in the breakdown of the marriage; and (7) the fact that Wife can never benefit from Husband's social security due to his actions. The Supreme Court of Appeals of West Virginia has explained that as long as the family court fully considers the mandatory statutory factors, and if the award of spousal support is within the parameters of reasonableness, a reviewing court should not disturb the award on appeal. *Mulugeta v. Misailidis*, 239 W. Va. 404, 410, 801 S.E.2d 282, 288 (2017). Further, our Supreme Court of Appeals has held that "[spousal support] may not be awarded solely for the purpose of equalizing the income between spouses." *Stone v. Stone*, 200 W. Va. 15, 19, 488 S.E.2d 15, 19 (1997) (per curiam). Additionally, the Supreme Court has noted that "it is not necessary to make specific findings as to each statutory factor recited but only those applicable and appropriate to the case." *Banker*, 196 W. Va. at 549, 474 S.E.2d at 479 (quoting *Burnside v. Burnside*, 194 W. Va. 263, 275 n. 30, 460 S.E.2d 264, 276 n. 30 (1995)). Lastly, West Virginia Code § 48-8-104 (2001) states:

> In determining whether spousal support is to be awarded, or in determining the amount of spousal support, if any, to be awarded, the court shall consider and compare the fault or misconduct of either or both of the parties and the effect of the fault or misconduct as a contributing factor to the deterioration of the marital relationship.

Because the family court fully considered all applicable spousal support factors in West Virginia Code § 48-6-301, as well as Husband's extreme fault in the breakdown of the marriage, we conclude that the court did not abuse its discretion in awarding lump sum spousal support to Wife.

In his second assignment of error, Husband contends that an award of attorney's fees to Wife was not appropriate under West Virginia Code § 48-5-611 (2001)[2] or the *Banker* case.[3] While the family court was well within its discretion to award attorney's fees in this case, Syllabus Point 4 of *Banker* states that a "wide array of factors" must be considered when granting a request for attorney's fees, and the Supreme Court of Appeals listed six factors which should be considered. Here, the family court's order contained only one conclusory sentence addressing attorney's fees and failed to include any analysis. Therefore, we vacate the family court's order only as to attorney's fees, and remand to

[2] West Virginia Code § 48-5-611 states:

(a) Costs may be awarded to either party as justice requires, and in all cases the court, in its discretion, may require payment of costs at any time and may suspend or withhold any order until the costs are paid.

(b) The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action. An order for temporary relief awarding attorney's fees and court costs may be modified at any time during the pendency of the action, as the exigencies of the case or equity and justice may require, including, but not limited to, a modification which would require full or partial repayment of fees and costs by a party to the action to whom or on whose behalf payment of such fees and costs was previously ordered. If an appeal be taken or an intention to appeal be stated, the court may further order either party to pay attorney fees and costs on appeal.

(c) When it appears to the court that a party has incurred attorney's fees and costs unnecessarily because the opposing party has asserted unfounded claims or defenses for vexatious, wanton or oppressive purposes, thereby delaying or diverting attention from valid claims or defenses asserted in good faith, the court may order the offending party, or his or her attorney, or both, to pay reasonable attorney's fees and costs to the other party.

[3] Syl. Pt. 4 of *Banker* states:

In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

family court with directions to issue a new order containing sufficient analysis under *Banker*.[4]

Accordingly, we affirm, in part, vacate, in part, and remand the family court's March 12, 2024, final divorce order.

Affirmed, in part, Vacated, in part, and Remanded with directions.

**ISSUED:** October 28, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[4] Upon completing its analysis on remand, the family court may reach the same conclusion. However, it is imperative to include sufficient analysis of the *Banker* factors to facilitate meaningful appellate review.